UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAKESH BATTINENI,

Plaintiff,

v.

UR JADDOU, et al.,

Defendants.

Case No. 24-cv-302 (CRC)

## MEMORANDUM OPINION

Tired of waiting for immigration officials to renew his authorization to return to the United States after traveling abroad, Tennessee resident and Green Card applicant Rakesh Battineni brings a novel argument to facilitate the international trips he wishes to make. He claims that Section 558(c) of the Administrative Procedure Act, which governs licenses, automatically extended his expired travel authorization. And he asks the Court to order Customs and Border Protection ("CBP") to honor this supposed extension and permit him to reenter the country with a lapsed travel authorization. This the Court cannot do. Although Battineni appears to have standing to pursue his claim, CBP's refusal to automatically extend his travel authorization is committed to the Secretary of Homeland Security's discretion and is therefore unreviewable. In any event, Section 558(c) has no application to a temporary, interim immigration benefit like a travel authorization.

## I.  Background

The Immigration and Nationality Act ("INA"), P.L. 82-414, 66 Stat. 163 (1952), grants the Secretary of Homeland Security discretion to temporarily parole, or allow entry into the United States, "any alien applying for admission to the United States" "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The INA's regulations further

permit advance parole—prior authorization to travel abroad and return to the country.  8 C.F.R. § 212.5(f).

To apply for advance parole, an applicant with a pending application for adjustment of status to that of a lawful permanent resident (also known as a Green Card application) must fill out Form I-131.  Form I-131, Instructions for Application for Travel Document at 2, https://usaodc.click/I-131Instrs (last visited Feb. 21, 2025).  The application form notes that "DHS may, as a matter of discretion, issue an Advance Parole Document under the general parole authority of INA section 212(d)(5)(A) to a noncitizen who is inside the United States and who seeks to be able to request parole under INA section 212(d)(5)(A) upon return from a trip abroad."  Id.  Applicants are further warned that if they are applying for advance parole based on their immigration status, they may no longer be eligible for that immigration status if they leave the United States without first obtaining advance authorization.  Id.

Plaintiff Rakesh Battineni, a citizen of India, resides in Knoxville, Tennessee.  Am. Compl. ¶ 1.  Battineni has lived in the United States in lawful nonimmigrant status for more than seventeen years.  Id. ¶ 35.  He is currently residing in the United States as a nonimmigrant and filed a Green Card application in October 2021.  Id. ¶¶ 35, 39–42; USCIS, Adjustment of Status, https://www.uscis.gov/green-card/green-card-processes-and-procedures (last visited Feb. 21, 2025).  Alongside his Green Card application, he sought work authorization and multi-entry advance parole.  Id. ¶ 43.

In 2022, United States Citizenship and Immigration Services ("CIS") issued Battineni both a work authorization and multi-entry advance parole on a "combo card," which is good for two years from the date of approval.  Id. ¶ 45, see id. ¶ 55.  Battineni's travel authorization was set to expire on March 14, 2024.  Id. ¶ 55.  In March 2023, a full year ahead of its expiration,

Battineni filed an application to renew his travel authorization.  Id. ¶¶ 46–49.  CIS accepted his application and assigned it a receipt number.  Id. ¶ 48.  To date, however, CIS inexplicably has not approved Battineni's renewal, and his travel authorization subsequently expired in March 2024.  Id. ¶ 54–55; 60.  Battineni also applied for renewal of his work authorization, which CIS approved in October 2023.  Id. ¶ 49–50.

Battineni has made an unspecified number of inquiries with CIS about the status of his application, to which the agency responded that its processing of the application is "within normal processing time."  Id. ¶ 61.  If he travels internationally without prior authorization, he says, he will be required to apply for a new visa at the United States consulate in India, which likely will require further action by Mr. Battineni's employer.  Id. ¶ 63.  He also claims that CBP will not allow him to board a common carrier to seek parole at a U.S. port of entry because the agency "requires noncitizens to have an unexpired advance parole document to seek parole at the border."  Id. ¶ 68.  Battineni claims he needs to travel internationally for personal and professional reasons.  Id. ¶ 65.  And he has been unable to visit his family overseas while CIS processes his travel authorization.  Id. ¶ 66.

In February 2024, Battineni filed suit against CIS and CBP.  He contends that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361 et seq, require CIS to adjudicate his travel authorization application without unreasonable delay and seeks a court order compelling it to do so.  Id. ¶¶ 76–98.  He also alleges that CBP's failure to treat his expired travel authorization as automatically extended violates Section 558(c) of the APA.  Id. ¶¶ 99–140.

CIS and CBP filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).  After

the motion was filed, Battineni voluntarily dismissed all claims against CIS.  Notice of Voluntary

Dismissal, ECF No. 15.  Therefore, only his claim against CBP remains.  For the reasons that

follow, the Court will grant the government's motion to dismiss.

## II.    Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court

"must treat the complaint's factual allegations as true[] and must grant plaintiff the benefit of all

inferences that can be derived from the facts alleged."  Giliana v. Blinken, 596 F. Supp. 3d 13,

17 (D.D.C. 2022) (Cooper, J.) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113

(D.C. Cir. 2000)).  However, a court need not accept inferences drawn by the plaintiff that are

unsupported by facts alleged in the complaint nor accept a plaintiff's legal conclusions as true.

Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  Under Rule 12(b)(1), the plaintiff

bears the burden of establishing jurisdiction by a preponderance of the evidence.  See Lujan v.

Defs. of Wildlife, 504 U.S. 555, 561 (1992).  But on a 12(b)(6) challenge, the defendant bears

the burden, and "dismissal is inappropriate unless the 'plaintiff can prove no set of facts in

support of his claim which would entitle him to relief.'"  Browning, 292 F.3d at 242 (citation

omitted).

## III.    Analysis

The government advances three arguments in support of its motion to dismiss: (1)

Plaintiff lacks standing; (2) the INA strips federal court jurisdiction over Plaintiff's challenge;

and (3) on the merits, CBP's policy does not violate the APA.  Because Battineni's claim is

unreviewable, and his statutory argument in any event fails on the merits, the Court will dismiss

his complaint.

A. <u>Standing</u>

The government first argues that Battineni lacks standing to pursue his remaining claim.[1] In order to establish standing, a plaintiff must demonstrate (1) that he has suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992).

The government asserts that Battineni fails to allege a concrete, particularized injury arising from the CBP policy he challenges. Mot. to Dismiss at 7–8; Reply at 3–4. Battineni's only remaining challenge is to CBP's policy of requiring individuals to present an unexpired advance parole document in order to board a common carrier to a United States port of entry. Am. Compl. ¶ 68. Thus, Battineni complains, "CBP's policies will not permit him to board an international flight back to the US and, even if he arrives at a lawful port of entry to seek parole, CBP will inspect and remove him." Opp'n at 5.

As the government correctly points out, Battineni cannot recast his injury as a "prohibition on international travel." Reply at 3. If he travels internationally without an advance parole document, he retains the option to "travel to a United States consulate in India, acquire a new visa, and then seek admission to the United States." Am. Compl. ¶ 63. Nevertheless, the existence of an alternate route to reapply for admission does not prevent Battineni from asserting a concrete injury here. Advance parole is "a valuable benefit," which, under CBP policy,

---

[1] Although the government's argument sounds in ripeness, it essentially asserts that Battineni lacks an injury-in-fact for purposes of Article III.

permits Battineni to book a flight to return to the United States from abroad.[2]  De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs., 720 F. Supp. 3d 794, 802 (N.D. Cal. 2024) (holding that the loss of opportunity to be considered for advance parole presents enough of an injury for standing purposes); see Am. Compl. ¶ 68.  There is no guarantee, on the other hand, that Battineni's application for a new visa at a United States consulate in India would be successful. It is thus reasonable for Battineni to stay in the United States until he receives a travel authorization, which would provide him the peace-of-mind needed to visit his family abroad. See id. ¶ 66.  Although Battineni remains free to leave the United States, his inability to do so without a guarantee of reentry qualifies as an injury-in fact.

As to the other two standing requirements, the Court harbors some doubt as to whether Battineni's injury is traceable to CBP and whether an order directed to CBP could redress it. Battineni identifies the source of his injury as CBP's refusal to treat his expired travel authorization as still in force.  See id. ¶ 68–69, 74.  But the INA states that an immigrant "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document . . ." is inadmissible.  8 U.S.C. § 1182(a)(7)(A)(i). And the Court cannot order CBP "to take actions contrary to governing statutes."  Museboyina v. Jaddou, No. 22-cv-3169, 2023 WL 1438666, at *8 (D. Neb. Feb. 1, 2023), appeal dismissed, No. 22-3068, 2023 WL 9507658 (8th Cir. Nov. 21, 2023).  It appears to the Court that Battineni's real beef is with CIS's delay in processing his renewal, not with CBP.

---

[2] This is so even if, as the government argues, CBP still retains the discretion not to grant parole at the port of entry.  Mot. to Dismiss at 4.

Battineni argues, however, that Section 558(c) of the APA requires the CPB to treat his expired travel authorization as automatically extended upon submission of a renewal application. Opp'n at 10–11.  And "a court must assume the merits of a plaintiff's legal claim when evaluating standing."  Doe v. Pompeo, 451 F. Supp. 3d 100, 113 (D.D.C. 2020).  If the APA permits CPB to allow immigrants with expired travel authorizations and pending renewal applications to enter the country, ordering CPB to do so would redress Battineni's injury.  The Court therefore concludes that Battineni has standing to pursue his claim.

The line of cases holding "that non-resident aliens lack standing to challenge the determinations associated with their visa applications" because "foreign nationals seeking admission have no constitutional right to entry" does not displace this conclusion.  Polyzopoulos v. Garland, No. 20-cv-0804 (CKK), 2021 WL 1405883, at *7 (D.D.C. Apr. 14, 2021) (collecting cases).  Battineni is a United States resident who seeks not a right of entry but of *reentry*. Moreover, these cases appear to be in some tension with the command that courts "assume the merits when evaluating standing."  Parker v. District of Columbia, 478 F.3d 370, 377 (D.C. Cir. 2007), aff'd sub nom. District of Columbia v. Heller, 554 U.S. 570 (2008).  Whether a plaintiff has the right to enter the country concerns the merits of their claim, not Article III standing. Cases that hold otherwise seem to be overreading the term "legally protected interest" used in Lujan.  Parker, 478 F.3d at 377.  But as the D.C. Circuit has noted, the appropriate question for Article III purposes is whether plaintiff has alleged an injury to a "cognizable interest," not whether he has a "legal *right*" to the relief sought.  Id. (emphasis in original).  Recent Supreme Court precedent suggests as much.  See Dep't of State v. Muñoz, 602 U.S. 899, 909 (2024) (concluding, on the merits, that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country without mentioning Article III standing); Trump

v. Hawaii, 585 U.S. 667, 699 (2018) (noting that the government's argument that plaintiffs lacked "a legally protected interest in the admission of particular foreign nationals" "concern[ed] the merits rather than the justiciability of plaintiffs' claims.").

    B. Unreviewability

The government next argues that the Secretary of Homeland Security's decision whether to grant advance parole is discretionary and therefore unreviewable by this Court.  Mot. to Dismiss at 8–10; Reply at 4–5.  The Court agrees.

The relevant provision of the INA grants the Secretary of Homeland Security authority to "*in his discretion* parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States[.]"  8 U.S.C. § 1182(d)(5)(A) (emphasis added).  The judicial-review provision of the INA specifies that no court shall have jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C § 1252(a)(2)(B)(ii).

Battineni challenges CBP's refusal to treat his expired travel authorization as automatically extended.  He asks the Court to "order CBP to consider Plaintiff's original advance parole as not expired."  Am. Compl. ¶ 98.  In other words, he seeks a grant of advance parole while his renewal application is pending.  But CBP's decision whether to grant Battineni parole is committed to the Secretary's discretion and is unreviewable under Section 1252(a)(2)(B)(ii). Other courts have likewise held that courts lack jurisdiction to review the Secretary's "decision to grant or revoke parole."  Samirah v. O'Connell, 335 F.3d 545, 549 (7th Cir. 2003).

Battineni resists this conclusion in two ways.  First, he argues that the INA's regulations render the issuance of his advance parole nondiscretionary.  Opp'n at 7.  That argument does not get off the ground.  The regulation he cites states: "When parole is authorized for an alien who will travel to the United States without a visa, the alien shall be issued an appropriate document authorizing travel."  8 C.F.R. § 212.5(f).  As the government correctly observes, this regulation merely requires the issuance of an appropriate travel permit *after* parole has been authorized. Reply at 4–5.  The regulation says nothing about when parole must be authorized, nor does it remove parole decisions from the Secretary's discretion.

Battineni's second argument— that APA Section 558(c)(2) displaces the Secretary's discretion— overlaps with his argument on the merits.  As the Court will next discuss, that contention fails, too.

C. Merits

Even if the CBP's decision not to automatically renew Battineni's advance parole were outside the Secretary's discretion, his argument fails on the merits.  Battineni claims that Section 558(c)(2) of the APA requires CBP to treat his expired travel authorization as automatically extended while CIS processes his renewal application.  Opp'n at 10–11.  Section 558(c) states in relevant part: "When the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency."  5 U.S.C. § 558(c).  And the APA defines license to include "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission."  Id. § 551(8).

Contrary to Battineni's argument, Section 558 does not apply to advance parole under the INA. The government relies for support on Supreme Court precedent holding that the INA "expressly supersedes the hearing provisions" of the APA. Marcello v. Bonds, 349 U.S. 302, 310 (1955); see also Ardestani v. INS, 502 U.S. 129, 133–34 (1991) (reaffirming Marcello). Although Section 558 is not one of the APA's hearing provisions, the question here, too, "is whether Congress has established procedures so clearly different from those required by the APA that it must have intended to displace the norm." Asiana Airlines v. F.A.A., 134 F.3d 393, 397 (D.C. Cir. 1998).

Several features of advance parole make applying Section 558(c) to it nonsensical. As noted, parole is an immigration benefit that may be granted in the Secretary's discretion "temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The statute directs that parole "shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." Id. Thus, the statute explicitly preserves the Secretary's "discretion to revoke advance parole when it no longer serves its purpose." Mohsenzadeh v. Kelly, 276 F. Supp. 3d 1007, 1012 (S.D. Cal. 2017). In the context of that broad discretion, it would make little sense to apply Section 558's requirements of prior notice and an "opportunity to demonstrate or achieve compliance with all lawful requirements" prior to revoking advance parole. 5 U.S.C. § 558(c)(1), (2).

The District Court for the Northern Mariana Islands—the only court that appears to have considered a similar question—came to the same conclusion, holding that Section 558(c) does not apply to work permits for transitional workers. Commonwealth Utils. Corp. v. Johnson, 218

F. Supp. 3d 1136, 1143–44 (D. N. Mar. I. 2016).  The court reasoned that "[n]either Congress nor DHS has ever referred to the CW–1 classification [for transitional workers] as a 'license' pursuant to 5 U.S.C. § 551(8), nor indicated any intent to extend the application of section 558(c) to any temporary foreign immigration benefits."  Id. at 1143.  Here too, Battineni cites no authority suggesting that Congress intended Section 558(c) to apply to advance parole or viewed travel authorization as a form of license.

Putting the last nail in the coffin of Battineni's argument, Section 558(c) is limited to licenses "with reference to an activity of a continuing nature."  5 U.S.C. § 558(c).  These "regularly issued licenses" "suggest an activity that is normally carried on indefinitely under licenses that as a regular matter are renewed or replaced[.]"  Miami MDS Co. v. F.C.C., 14 F.3d 658, 660 (D.C. Cir. 1994) (citation omitted).  Qualifying licenses govern activities like "radio broadcasting or shipping services," but courts have declined to apply Section 558(c) to, for instance, a dredge-and-fill permit which expired if the work was not completed by a certain date. Id.

Advance parole in no way resembles the continuing activities to which Section 558(c) applies.  As just explained, the Secretary may grant parole "*temporarily* under such conditions as he may prescribe only on a case-by-case basis" "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A) (emphasis added).  Advance parole may be revoked at his discretion, id., and Battineni offers no evidence suggesting "it is renewed as a regular matter of course."  Johnson, 218 F. Supp. 3d at 1143.  Indeed, Battineni admits that his advance parole was only "good for two years from the date" of approval.  Am. Compl. ¶ 45.  Although Battineni protests that his travel authorization allowed him to travel more than once in two years, that does

not change the fact that it referenced a time-limited, temporary benefit that would "expire unless timely renewed." Johnson, 218 F. Supp. 3d at 1143.[3]

Moreover, Battineni himself characterizes multi-entry parole as an "interim benefit" available to those waiting for their Green Cards to be processed. Am. Compl. ¶¶ 25–26, 44. And he indicates that it was the lack of action on his Green Card that required him to reapply for travel authorization. Id. ¶ 46. By its nature, the travel authorization he seeks is a stop-gap solution while he waits for his Green Card and cannot possibly apply to an indefinitely continuing activity.

Accordingly, Section 558(c) does not apply, and Battineni must wait until CIS processes his renewal application to enjoy the benefits of advance parole.

## IV. Conclusion

For these reasons, the Court will dismiss the complaint and the case in a separate order that accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: February 21, 2025

---

[3] Battineni also points for support to CPB's policy of permitting conditional residents with expired resident cards to board a common carrier if they are also in a possession of a Notice of Action form that "extends the validity of the card for a specified length of time." Opp'n, Ex. A ("CBP Policies") at 33; see Opp'n at 4. That argument is entirely inapposite, as it concerns individuals with a different immigration status—conditional residents—whose benefits are in fact extended automatically when they submit the appropriate form. Reply at 7–8.